UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CARRIE OLIVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:22-CV-28-DCP |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 12]. Now before the Court are

Plaintiff's Motion for Summary Judgment [Doc. 13] and Defendant's Motion for Summary

Judgment [Doc. 16]. Carrie Oliver ("Plaintiff") seeks judicial review of the decision of the

Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the

Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and

**GRANT** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

On March 21, 2019, Plaintiff filed an application for disability insurance benefits pursuant

to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, claiming a period of disability that

began on January 15, 2019 [Tr. 13, 66]. After her application was denied initially [*Id.* at 94–98]

and upon reconsideration [*Id.* at 100–06], Plaintiff requested a hearing before an ALJ [*Id.* at 107–

---

[1]    Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration
("the SSA") on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

08]. A telephonic hearing was held before the ALJ on October 28, 2020 [Tr. 37–55]. On January 20, 2021, the ALJ found that Plaintiff was not disabled [Tr. 10–32]. The Appeals Council denied Plaintiff's request for review on November 24, 2021 [Tr. 1–3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on January 25, 2022, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2024.

2. The claimant has not engaged in substantial gainful activity since January 15, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: multiple sclerosis and degenerative disc disease of the cervical spine (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can perform all postural occasionally, except she cannot climb ladders, ropes or scaffold, and she can have no exposure to vibrations, extreme temperatures and hazards such as unprotected heights; she can engage in occasional pushing/pulling with the bilateral lower extremities; she requires a cane to ambulate over uneven surfaces or rough terrain.

2

6. The claimant has past relevant work as a patient care coordinator, classified as light and skilled (SVP 7) work, and as a customer service representative supervisor, classified as sedentary and skilled (SVP6) work, but light as performed. Her work as a customer service representative supervisor does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 15, 2019, through the date of this decision (20 CFR 404.1520(f)).

[Tr. 15–32].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).  It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference."  *Buxton v. Halter*, 246 F.3d 762,

3

773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.     DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

4

in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), -(e), 416.920(a)(4), -(e). RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137,

5

146 (1987)).

## V.    ANALYSIS

Plaintiff raises three arguments on appeal as to why the ALJ's decision should be remanded.  First, she argues the ALJ failed to properly evaluate the opinion evidence from Stephen K. Goewey, M.D. ("Dr. Goewey") when determining Plaintiff's RFC [Doc. 14 pp. 11–18].  Second, Plaintiff contends the ALJ erred by finding her depressive disorder and anxiety disorder were not "severe" impairments for purposes of step two in the analysis [*Id.* at 18–19].  Third, she argues the jobs of addresser, document preparer, and cutter and paster of press clippings that the ALJ relied on at step five in the analysis, based on the vocational expert's testimony, are obsolete [*Id.* at 19–21].  The Commissioner contends that Plaintiff's arguments are without merit because: (1) the ALJ evaluated Dr. Goewey's opinion in accordance with agency regulations and her evaluation of his opinion is otherwise supported by substantial evidence [Doc. 17 pp. 13–16]; (2) substantial evidence supports the ALJ's finding that Plaintiff's mental impairments are not severe [*Id.* at 16–18]; and (3) the ALJ properly relied on the vocational expert's testimony regarding the jobs that Plaintiff now argues are obsolete and, regardless, any error by the ALJ was harmless [*Id.* at 18–20].  Having reviewed this matter and considered the parties' arguments, the Court finds Plaintiff has not presented a valid basis for disturbing the Commissioner's final decision, which applied the correct legal standards and procedures and is otherwise supported by substantial evidence.

### A.    The ALJ's Evaluation of Dr. Goewey's Medical Opinion

Plaintiff first argues the ALJ erred by failing to properly evaluate and incorporate the medical opinion of Dr. Goewey into Plaintiff's RFC [Doc. 14 pp. 11–18].  Specifically, Plaintiff argues the ALJ erred in evaluating two limitations espoused by Dr. Goewey in his opinion,

6

including, (1) that Plaintiff could only stand, walk, and sit for a combined six hours in an eight-hour workday [*Id.* at 12–16], and (2) that she should use an assistive device for "safety including prolong[ed] walks on uneven surfaces" [*Id.* at 16–18 (quoting Tr. 488)]. Plaintiff argues the ALJ's failure to adopt or otherwise properly evaluate these limitations is reversible error because both functional restrictions are "prima facie disabling" [*Id.* at 13]. In response, the Commissioner argues the ALJ "fully considered Dr. Goewey's opinion in accordance with agency regulations, but concluded it was not entirely persuasive for a number of reasons explained in [her] decision and supported by the record" [Doc. 17 p. 13]. For the reasons discussed below, the Court finds the ALJ did not err in her evaluation of Dr. Goewey's opined limitations.

### 1. Applicable Law

In determining a claimant's RFC, an ALJ must consider all relevant medical and other evidence, including medical opinion evidence. 20 C.F.R. § 404.1520(e). As of March 27, 2017,[2] an ALJ must "evaluate the persuasiveness of medical opinions and prior administrative medical findings" using five factors,[3] the most important of which are supportability and consistency. *Id.* § 404.1520c(a), (b)(2). The ALJs are required to "articulate how [they] considered the medical

---

[2] For claims filed prior to March 27, 2017, the weight afforded a medical opinion generally depended on whether the opinion was from "non-examining sources; examining but non-treating sources; [or] treating sources." *See Underwood v. Soc. Sec. Admin.*, No. 3:16-cv-00546, 2017 WL 128518, at *5 (M.D. Tenn. Jan. 11, 2017) (citing 20 C.F.R. § 404.1527). Under the prior regulations, "a treating physician's opinion [was] due 'controlling weight' if that opinion is 'well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Id.* This was known as the "treating physician" rule. *Id.*

[3] The five factors include the (1) supportability and (2) consistency of the opinions or findings, the medical source's (3) relationship with the claimant and (4) specialization, as well as (5) "other factors" such as the "medical source's familiarity with the other evidence in a claim" and their "understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(a), (c).

7

opinions and prior administrative medical findings" and specifically "explain how [they] considered the supportability and consistency factors" in "determin[ing] how persuasive [they] find a medical source's medical opinions or administrative medical findings to be." *Id.* § 404.1520c(a), (b)(2).

While "the Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the [articulation] requirement," *Gavre v. Comm'r of Soc. Sec.*, No. 3:20-CV-00551-DJH-CHL, 2022 WL 1134293, at *4 (W.D. Ky. Jan. 3, 2022) (Linsay, M.J.), "[d]istrict courts applying the [] regulations both within this circuit and throughout the country consistently apply the articulation requirement literally," *id.*, by requiring the ALJ to "provide a coherent explanation of [their] reasoning," *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021), "clearly explain [their] consideration of the opinion and identify the evidence supporting [their] conclusions," *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), and otherwise "explain how [they] considered the supportability and consistency factors as to each medical opinion." *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021). In other words, the ALJ must "build an accurate and logical bridge between the evidence and [the ALJ's] conclusion." *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *6 (N.D. Ohio June 3, 2021) (quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)).

As for when an ALJ's failure to follow section 404.1520c's articulation requirements constitutes harmless error, "[u]nder the prior regulations, the Sixth Circuit recognized three situations where an ALJ's procedural error in considering a medical source opinion was harmless," including "(1) where 'a treating source's opinion is so patently deficient that the Commissioner

could not possibly credit it,' (2) where 'the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion,' and (3) 'where the Commissioner has met the goal of ... the procedural safeguard of reasons.'" *Vaughn v. Comm'r of Soc. Sec.*, No. 20-cv-1119-TMP, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021) (quoting *Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 438 (6th Cir. 2018)). The third category "is saved for the 'rare case' where the ALJ has met the 'goal' of § 404.1527, 'if not meeting its letter.'" *Thaxton v. Comm'r of Soc. Sec.*, 815 F. App'x 955, 960 (6th Cir. 2020) (quoting *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 472 (6th Cir. 2006)). Although the Sixth Circuit has not squarely addressed the issue, lower courts within the circuit have applied this same harmless-error framework to the new regulations. *See, e.g.*, *Vaughn*, 2021 WL 3056108, at *11–*12 (finding the ALJ's error in failing to properly articulate the supportability factor was harmless because "the ALJ achieved the regulations' goals of providing notice to [the plaintiff] of why [the medical opinion] was not persuasive").

If the ALJ applied the correct legal standards in evaluating a medical opinion by properly articulating the consistency and supportability factors, the Court's review of the ALJ's evaluation of a medical opinion is otherwise limited to whether substantial evidence supports the ALJ's conclusions. *See Mercado v. Kijakazi*, No. 1:21-CV-365, 2022 WL 4357484, at *18 (M.D. Penn. Sept. 20, 2022) ("The ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding.").

### 2. Whether the ALJ's Evaluation of Dr. Goewey's Opinion Applied the Correct Legal Standards and is Supported by Substantial Evidence.

In this case, Dr. Goewey performed an examination of Plaintiff on October 10, 2019 [Tr. 486]. Following the examination, Dr. Goewey prepared a three-page report that contained a

9

summary of Plaintiff's history, the examinations he conducted, his assessment of Plaintiff's diagnosis, and his suggested plan [*Id.* at 486–88]. In his report, Dr. Goewey diagnosed Plaintiff as having multiple sclerosis and his opined limitations were as follows:

> Based on the above history and physical, it is expected the patient will be able to sit between three and four hours daily, stand and walk one to two hours daily, lift and carry 10 pounds occasionally, restrictions on foot controls and squatting, balancing, kneeling, and squatting activities. Recommend assistive device for safety including prolong[ed] walks on uneven surfaces.

[*Id.* at 488].

In reviewing Dr. Goewey's medical opinion as part of Plaintiff's RFC determination, the ALJ found the opinion "partially persuasive," reasoning:

> [Dr. Goewey's] musculoskeletal examination was significantly more limited than is reflected by the treatment notes, so it does not appear to be representative of [Plaintiff's] functioning. In addition, his standing/walking and sitting limitations would not account for a full 8-hour workday, and he has not presented a reasonable basis for limiting [Plaintiff's] ability to sit to only 3 to 4 hours. However, the standing and walking limitations of no more than 2 hours and lifting restriction to 10 pounds appears reasonable in light of [Plaintiff's] multiple sclerosis diagnosis and symptom and her degenerative disc disease. Although he does not state a specific capacity for postural activities and operation of foot controls, some limitation is reasonable in these areas due to her combination of impairments. Finally, I have generally accepted his opinion that she should use a cane for prolonged walking on uneven surfaces.

[Tr. 29–30].

On appeal, Plaintiff argues the ALJ erred when considering two of Dr. Goewey's opined limitations, including that Plaintiff could only stand, walk, and sit for a combined six hours in an eight-hour workday [Doc. 14 pp. 12–16] and that Plaintiff should use an assistive device for "safety including prolong[ed] walks on uneven surfaces" [Id. at 16–18 (quoting Tr. 488)]. Plaintiff argues the ALJ's failure to properly consider these limitations was harmful as these limitations would have been prima facie disabling had the ALJ properly considered them [*Id.* at 13, 17]. Contrary

10

to Plaintiff's arguments, the Court finds that the ALJ applied the correct legal standards in evaluating Dr. Goewey's opinion, any error by the ALJ in not applying the correct legal standards was harmless, and substantial evidence otherwise supports the ALJ's evaluation of Dr. Goewey's opined limitations.

### a.    Section 404.1520c's Articulation Requirements

The Court first considers whether the ALJ applied the correct legal standards when evaluating Dr. Goewey's opinion.  As an initial matter, it is unclear whether Plaintiff has raised the issue of whether the ALJ applied the correct legal standard by articulating the consistency and supportability factors.  While Plaintiff cites to the articulation requirements in the opening section of her supporting memorandum [Doc. 14 p. 11], her substantive argument focuses only on whether the ALJ reached the correct conclusion in discounting Dr. Goewey's limitations—not whether the ALJ applied the correct standards in reaching that conclusion.[4]   Nevertheless, the Court finds it appropriate to consider whether the ALJ met the articulation requirements in evaluating Dr. Goewey's opinion.

In applying section 404.1520c's articulation requirements, all medical sources are to be considered, and the ALJ is required to determine the "persuasiveness" of each medical opinion based on the factors specified in the regulations.  *See* 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions.").  Although

---

[4]     The only reference Plaintiff makes to the supportability and consistency factors is her concluding statement, "the ALJ's reasons for rejecting the pertinent disabling limitations in Dr. Goewey's opinion were not supported by or consistent with the record" [Doc. 14 pp. 17–18].  Even this statement, however, focuses on the ultimate conclusion the ALJ reached to the extent it focuses on whether the ALJ's conclusions were supported by, and consistent with, the evidence, not whether the ALJ sufficiently stated why the medical source opinion's findings were, or were not, supported by and consistent with the record.

there are five factors, the most important are supportability and consistency, and an ALJ must explain how these two factors were considered for each source. *Id.* § 404.1520c(b)(2) ("The factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions").

As for how an ALJ is to treat specific limitations within a medical opinion, the ALJ is not required "to adopt [the opinion] verbatim; nor is the ALJ required to adopt the [medical source's] limitations wholesale," even where the ALJ finds an opinion to be persuasive. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (stating same with regard to state agency psychologist's opinion assigned "great weight" by the ALJ). "There has [also] never been a requirement that an ALJ explain in detail why each specific limitation offered by every source was rejected." *Jessica W. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2356, 2023 WL 2500307, at *9 (S.D. Ohio Mar. 14, 2023); *see also John G. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2105, 2022 WL 17413209, at *3–*5 (S.D. Ohio Dec. 5, 2022) (rejecting the plaintiff's argument that "the ALJ failed to adequately explain why she was omitting a specific limitation opined by the Agency's own experts," because the ALJ found the opinions only "somewhat persuasive" and otherwise properly considered the consistency and supportability factors) (citing *Reeves*, 619 F. App'x at 276). With that framework in mind, the Court considers whether the ALJ properly articulated the supportability and consistency factors in evaluating Dr. Goewey's opinion.

As to the supportability factor, section 404.1520c(c)(1) states, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). In this case, while the ALJ did not explicitly use the word "supportability," she did analyze whether Dr. Goewey's limitations were supported by, or

12

grounded in, his examination findings. *See Cormany v. Kijakazi*, No. 5:21CV933, 2022 WL 4115232, at *5 (N.D. Ohio Sept. 9, 2022) ("Although the ALJ did not use the words 'supportability' and 'consistency' in the decision, this omission does not necessarily mean that the ALJ did not consider these factors."). Specifically, the ALJ found that Dr. Goewey failed to account for two hours of Plaintiff's eight-hour workday in his proposed limitations and otherwise did not present a reasonable basis for his three-to-four-hour sitting limitation—findings that weighed against the supportability of Dr. Goewey's opinion [Tr. 29]. The ALJ also found, however, that Dr. Goewey did present a basis for Plaintiff's standing and walking limitations based on his multiple sclerosis diagnosis and the accompanying symptoms, as well as Plaintiff's diagnosis of degenerative disc disease—a finding that weighed in favor of the supportability of Dr. Goewey's opinion [*Id.*]. Each of these statements, which address whether Dr. Goewey's recommendations align with his findings, show that the ALJ properly considered the supportability factor.

As to the consistency factor, section 404.1520c(c)(2) states, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). Whether the ALJ sufficiently articulated whether Dr. Goewey's opinion was inconsistent with other evidence in the record is a closer call. In the paragraph of her opinion analyzing whether she found Dr. Goewey's opinion persuasive, the only time the ALJ compares Dr. Goewey's opinion to other evidence in the record is her statement, "I note [Dr. Goeway's] musculoskeletal examination was significantly more limited than is reflected by the treatment notes, so it does not appear to be representative of her functioning" [*Id.*]. On the one hand, the ALJ appears to be referring to evidence other than Dr. Goewey's opinion since Dr. Goewey did not "treat" Plaintiff.

13

However, the ALJ does not specify to which "treatment notes" she is comparing Dr. Goewey's musculoskeletal examination. *See Sparks v. Kijakazi*, No. 2:21-CV-102-DCP, 2022 WL 4546346, at *9 (finding the ALJ failed to sufficiently articulate the consistency factor, in part, by failing to identify which evidence in the record was consistent with his conclusions).

While the ALJ may not have met the literal requirements of section 404.1520c in that she failed to specifically articulate what other treatment notes she was comparing Dr. Goewey's examination to, the Court finds this to be one of those "rare case[s]" in which the ALJ nevertheless met the regulations' goal. *Thaxton*, 815 F. App'x at 960. Specifically, she has met the goal "of providing notice to [Plaintiff] why Dr. [Goeway's] opinion was not persuasive" by "provid[ing] good reasons for discounting the physician opinion in some other part of the decision but failed to explicitly state those reasons when discussing the physician opinion itself." *Vaughn*, 2021 WL 3056108, at *11, *12 (internal quotations omitted).

Shortly after analyzing the persuasiveness of Dr. Goewey's opinion, the ALJ compared Dr. Goewey's opined assistive-device limitation to other evidence in the record in finding the DDS only partially persuasive. Specifically, the ALJ found:

> Also, they do not appear to have adequately considered Dr. Goewey's opinion that she should use a cane for safety. Even though the claimant has admitted she has not fallen, she has alleged having balance problems at times, and she has reported using a cane, especially when going outside her home. Therefore, it is reasonable to allow a cane for safety as well as to give her a sense of stability when subjectively having intermittent balance issue.

[Tr. 34]. These statements by the ALJ, although not contained in the paragraph of the opinion analyzing the persuasiveness of Dr. Goewey's opinion, go directly to whether Dr. Goewey's opined limitations were consistent with other evidence in the record, namely, Plaintiff's own testimony and reports to her doctors.

14

Furthermore, after extensively detailing the findings of several of the medical opinions contained in the record, including Dr. Goewey's, but before analyzing the persuasiveness of Dr. Goewey's opinion, the ALJ analyzed whether the Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms are supported by the relevant evidence. In finding Plaintiff's statements were not consistent with the record, the ALJ cited examinations she believed showed the Plaintiff's symptoms had been improving, including:

> [Plaintiff's] most recent neurology appointment showed she had experienced significant improvement overall, and her weakness, gait issues and difficulty ambulating appeared to have improved. The neurology exam revealed full muscle strength at 5/5 and intact sensation throughout. As noted above, an exam at Arthritis Associates on November 13, 2019 was only positive for bilateral ankle swelling. The rest of the exam revealed no pain, tenderness, swelling, and no limitation on range of motion of all joints. She also had a normal spine exam, intact sensation, and normal motor strength.

[Tr. 28]. Since the ALJ used these specific examinations from the record to find Plaintiff's symptoms were not as debilitating as she stated, the Court finds it reasonable to conclude these were some, if not all, of the same examinations and treatment notes the ALJ was referring to in declining to adopt the more-restrictive limitations in Dr. Goewey's opinion.[5]

In light of these additional statements in other portions of the ALJ's analysis, the Court finds this is not a case in which the ALJ failed to "build an accurate and logical bridge between the evidence and [her] conclusion." *Todd*, 2021 WL 2535580, at *6. Although the ALJ may not have met the literal requirements of section 404.1520c in the paragraph of her decision discussing the persuasiveness of Dr. Goewey's opinion, "[b]ecause the ALJ's decision on the whole gives the

---

[5] The Court also notes that both parties cite to the treatment notes of Dr. Wilcox—another provided who examined Plaintiff—in support of their argument about the ALJ's examination of Plaintiff's treatment notes, thereby evincing that they understood what treatment notes the ALJ was referring to [Doc. 14 p. 15; Doc. 17 p. 14].

15

court [and parties] a logical understanding of why she believed Dr. [Goewey's] opinion lacked record support, the regulation's goal for the ALJ to provide a coherent explanation of his or [her] reasoning as to how persuasive a physician opinion is satisfied." *Vaughn*, 2021 WL 3056108, at *12. Remand is therefore not required.

### b. Substantial Evidence

Having found the ALJ applied the correct legal standard in evaluating Dr. Goewey's opinion, or that any error was harmless, the remainder of the Court's review is limited to whether the ALJ's conclusions are supported by substantial evidence. Specifically, the Court turns to whether substantial evidence supports the ALJ's conclusions regarding the two limitations in Dr. Goewey's opinion that Plaintiff challenges on appeal, namely, Dr. Goewey's stand-walk-sit limitation and his assistive-device limitation.

### i. Dr. Goewey's Stand-Walk-Sit Limitation

Plaintiff first challenges the ALJ's failure to adopt Dr. Goewey's finding that Plaintiff could only stand, walk, and sit for a total of six hours in an eight-hour workday [Doc. 14 pp. 12–16]. Plaintiff specifically challenges two statements the ALJ made when discussing Dr. Goewey's stand-walk-sit limitation, including that: (1) "[Dr. Goewey's] musculoskeletal examination was significantly more limited than is reflected by the treatment notes, so it does not appear to be representative of [Plaintiff's] function," and, (2) "[Dr. Goewey] has not presented a reasonable basis for limiting [Plaintiff's] ability to sit to only 3 to 4 hours" [Tr. 29; Doc. 14 pp. 13–16]. For the reasons discussed below, the Court finds that both of the ALJ's statements are supported by substantial evidence.

As to the ALJ's conclusion that Dr. Goewey's examination was more limited than other evaluations in the record and therefore less representative of Plaintiff's functioning, Plaintiff

16

argues this statement "is not an accurate reflection of the record" because the ALJ failed to discuss the reports of two doctors who also evaluated Plaintiff [Doc. 14 p. 15]. Specifically, Plaintiff cites to Dr. Huffstutter's October 2019 findings that Plaintiff's gait was unstable, she exhibited swelling and pain with motion in both her hands and feet, she has frank arthritis, and she may have sarcoidosis, as well as Dr. Wilcox's treatment notes from July and August 2019, in which Dr. Wilcox stated Plaintiff's physical examination revealed tenderness in both of her hands [Doc. 14 p. 15].[6] However, "even if there is substantial evidence in the record that would have supported [Plaintiff's] opposite conclusion," the Court must defer to the ALJ's conclusion so long as it is supported by substantial evidence. *Blakley*, 581 F.3d at 406.

In this case, the Commissioner cites to several other treatment notes, or records, that would support the ALJ's statement, including: a January 2019 report by Dr. Horne that noted Plaintiff had full motor strength except for minimal right ankle weakness and mild bilateral lower extremity spasticity; an April 2019 report in which Plaintiff's motor strength was 5/5 except for minimal right ankle weakness and mild bilateral lower extremely spasticity; Dr. Wilcox's August 2019 report in which she indicated Plaintiff's examination was normal and her multiple sclerosis was stable; Dr. Wilcox's February 2020 report that showed Plaintiff's examination was entirely normal with normal range of motion, no motor weakness, and no muscular tenderness; Dr. Wilcox's August 2020 report in which Plaintiff had normal range of motion on her musculoskeletal examination; and Dr. Trudell's September 2020 findings that Plaintiff had no abnormalities in her motor function or reflexes, a normal gait, and Romberg's test was negative [Doc. 17 p. 14 (citing Tr. 487, 338, 25, 512, 514, 469, 594–95, 27, 569, 26, 637–38)].

---

[6]     Plaintiff fails to elaborate on how the pain in her hands—as cited in Dr. Wilcox's report and a portion of Dr. Huffstutter's report—is relevant to her stand-walk-sit limitation.

17

The records cited by the Commissioner, some of which appear to contain as-extensive—if not more-extensive—examinations as those cited by Dr. Goewey in his report, support the ALJ's proposition that Dr. Goewey's evaluation was more limited than other examinations and, thus, his opined sit-stand-walk limitations were less persuasive. *See* Tr. 594–95 (listing objective examination findings including, neck, musculoskeletal, and neurological findings, among others); Tr. 637 (stating "10 systems reviewed and documented" including motor, reflexes, and Roberg's test); Tr. 341 (documenting physical examination findings for neurological functioning, motor, sensation, cerebellar testing, deep tendon reflexes, and gait).

Plaintiff also contends the ALJ erred in stating, "[Dr. Goewey] has not presented a reasonable basis for limiting [Plaintiff's] ability to sit to only 3 to 4 hours" [Doc. 14 pp. 14–15]. Plaintiff argues this statement "misreads" Dr. Goewey's report because Dr. Goewey specifically stated in his report that, "Lower extremities deep tendon reflexes are absent in knee ankle bilaterally" [*Id.* at 14]. Plaintiff further argues Dr. Goewey's statement supports his sitting limitation because: (1) the statement reflects that Plaintiff has areflexia; (2) areflexia is a symptom of neuropathy and is "often" accompanied by other symptoms, (3) as cited in other portions of the record, Plaintiff has reported that she has these other symptoms, and, finally, (4) any of these other symptoms "could" limit one's sitting tolerance due to pain, stiffening, or weakness in joints [*Id.* at 14]. Dr. Goewey, however, did not make any of these connections or inferences between his isolated statement in the "physical examination" section of his report and the later findings of his report. In fact, Dr. Goewey failed to cite any portions of the earlier sections of his report in opining about Plaintiff's sitting limitation other than beginning his findings by stating, "[b]ased on the above history and physical . . ." [Tr. 488]. It was therefore reasonable for the ALJ, in discussing

18

the supportability factor and the lack of support Dr. Goewey gave for his opinion, to state he had not presented a reasonable basis for his sitting limitation.

The Court finds that the ALJ did not err in discounting Dr. Goewey's stand-walk-sit limitation, as both of the ALJ's statements pertaining to this limitation that Plaintiff now challenges on appeal are supported by substantial evidence.

### ii. Dr. Goewey's Assistive-Device Limitation

The other limitation from Dr. Goewey's report that Plaintiff argues the ALJ failed to properly evaluate is his assistive-device limitation. In his report, Dr. Goewey stated, "Recommend assistive device for safety including prolong[ed] walks or uneven surfaces" [Tr. 488]. In evaluating this portion of Dr. Goewey's opinion, the ALJ stated, "I have generally accepted [Dr. Goewey's] opinion that [Plaintiff] should use a cane for prolonged walking on uneven surfaces" [*Id.* at 30]. In addition, the ALJ included a limitation in Plaintiff's RFC regarding Plaintiff's use of an assistive device, stating, "[Plaintiff] requires a cane to ambulate over uneven surfaces or rough terrain" [*Id.* at 21].

On appeal, Plaintiff argues the ALJ's "interpretation of Dr. Goewey's opinion regarding [Plaintiff's] cane use is incorrect" [Doc. 14 p. 16]. She argues that "[t]he key word in Dr. Goewey's opinion regarding [Plaintiff's] cane use is for *safety*" [*Id.*]. Plaintiff goes on to state, "If Dr. Goewey had meant to limit [Plaintiff's] cane use to only prolonged walking on uneven surfaces, he would have said just that, and not used the words 'safety' or 'including'" [*Id.*]. In fact, Plaintiff notes "that in assessing Dr. Goewey's opinion regarding [Plaintiff's] cane use, the ALJ does not mention, even once, the words 'for safety including'" [*Id.* at 17]. As for what Plaintiff argues Dr. Goewey really meant, she states, "safety [in Plaintiff's case] means to keep her balance in any number of situations that could present an unsafe standing and/or walking

environment, including having to stand or walk on flat ground . . . for a period in excess of [Plaintiff's] tolerance" [*Id.* at 16]. Plaintiff argues that "had the ALJ properly considered Dr. Goewey's opinion regarding [Plaintiff's] cane use and included it for balance generally—instead of limiting [Plaintiff's] cane use to ambulation over uneven surfaces or rough terrain—[Plaintiff] would be found disabled" since the vocational expert testified that "adding a cane for balance . . . results in no work in the national economy" [*Id.* at 17].

Contrary to Plaintiff's arguments, the Court finds the ALJ did not err in her interpretation of Dr. Goewey's assistive-device limitation. Notably, Plaintiff is not arguing the ALJ erred by declining to adopt Dr. Goewey's assistive-device limitation. Rather, she is arguing the ALJ incorrectly interpreted the meaning and extent of Dr. Goewey's limitation when adopting it. Absent any contrary authority from Plaintiff, the Court finds that its review of such a challenge is limited to whether the ALJ's interpretation of the statements in Dr. Goewey's opinion was reasonable and supported by substantial evidence. *See Brandon v. Astrue*, No. 1:09 CV 857, 2010 WL 1444636, at *3 (N.D. Ohio Apr. 12, 2010) ("The ALJ's interpretation of Dr. Josell's opinion is a reasonable interpretation and is supported by substantial evidence.); *Smith v. Comm'r of Soc. Sec.*, No. 1:14-cv-746, 2015 WL 9467684, at *9 (S.D. Ohio Dec. 2, 2015) (rejecting the plaintiff's contention that "the ALJ misinterpreted and mischaracterized" a report in the record because the ALJ had reviewed the entirety of the record, her conclusions were supported by substantial evidence, and the plaintiff was otherwise asking the court to reweigh the evidence), *adopted sub. nom.*, No. 1:14-cv-746, 2015 WL 9460280 (S.D. Ohio Dec. 28, 2015).

In this case, the Court finds the ALJ's interpretation of Dr. Goewey's statement about Plaintiff's assistive-device limitation to be reasonable and supported by substantial evidence. Dr. Goewey stated, and only stated, "Recommend assistive device for safety including prolong[ed]

20

walks on uneven surfaces" [Tr. 488]. The ALJ, in turn, adopted the only example of when Plaintiff would need an assistive device for safety expressly provided by Dr. Goewey, namely, when Plaintiff takes prolonged walks on uneven surfaces. Plaintiff now argues that interpretation is incorrect because Dr. Goewey meant Plaintiff would need a cane whenever she was walking for longer periods, including on flat surfaces, in order to support her balance. However, Dr. Goewey made no such statements regarding the need for Plaintiff to use the cane to balance on flat surfaces in either his suggested limitations or examination findings. Regardless, even if Plaintiff's interpretation of Dr. Goewey's statement was reasonable despite not having any basis in Dr. Goewey's opinion, that does not render the ALJ's interpretation unreasonable.

Plaintiff argues the ALJ's interpretation is unreasonable in that it effectively ignores Dr. Goewey's use of the word "safety," as evidenced by the fact that the ALJ does not even cite the phrase "for safety including" in the portion of her opinion analyzing the persuasiveness of Dr. Goewey's opinion. While Plaintiff is correct that the ALJ did not use the term "safety" in the paragraph evaluating the persuasiveness of Dr. Goewey's opinion, at another point in her opinion the ALJ stated:

> Also, they do not appear to have adequately considered Dr. Goewey's opinion that she should use a cane for safety. Even though the claimant has admitted she has not fallen, she has alleged having balance problems at times, and she has reported using a cane, especially when going outside her home. Therefore, it is reasonable to allow a cane for safety as well as to give her a sense of stability when subjectively having intermittent balance issue[s].

[Tr. 30]. These statements indicate that the ALJ not only considered Dr. Goewey's use of the term "safety," but also relied on Plaintiff's own statements to differentiate between when Plaintiff would need a cane "for safety" as opposed to when she would need it for "stability" or subjective[] . . . intermittent balance issue[s]."

21

The Court therefore finds the ALJ did not err in her interpretation of Dr. Goewey's sole statement regarding when Plaintiff would need an assistive device. Dr. Goewey provided one example of when a cane would be needed for safety, and the ALJ incorporated that example. Plaintiff now asks the Court to take a more-expansive interpretation of Dr. Goewey's statements, particularly his use of the word "safety." However, that expansive reading is not grounded in Dr. Goewey's findings and, regardless, does not render the ALJ's interpretation unreasonable. Furthermore, while Plaintiff argues the ALJ's interpretation is unreasonable because Plaintiff failed to account for Dr. Goewey's reference to the word "safety" when discussing the persuasiveness of his opinion, the ALJ did reference Dr. Goewey's use of the term "safety" later in his opinion and expressly found, in considering Plaintiff's statements about her intermittent balance issues—statements she found earlier in the opinion were not supported by the medical evidence—that any balance issues were distinct from the safety issues discussed by Dr. Goewey. Thus, the ALJ's interpretation of Dr. Goewey's statement regarding Plaintiff's assistive-device limitation is reasonable and otherwise supported by substantial evidence in the record.

In sum, the Court finds the ALJ applied the correct legal standards when evaluating the persuasiveness of Dr. Goewey's opinion; to the extent the ALJ failed to sufficiently articulate the consistency factor, the ALJ nevertheless met the goal of section 404.1520c based on other portions of her opinion; and the ALJ's statements and conclusions regarding Dr. Goewey's sit-stand-walk and assistive-device limitations are supported by substantial evidence. The Court therefore denies Plaintiff's first basis for remand.

## B. The ALJ's Severity Determination

Plaintiff next argues the Commissioner's decision must be remanded because the ALJ erred in finding her depressive disorder and anxiety disorder were not "severe" impairments at step two

22

in the disability analysis [Doc. 14 pp. 18–19].  In response, the Commissioner argues remand is unnecessary, as the ALJ's evaluation of Plaintiff's mental impairments is supported by substantial evidence [Doc. 17 pp. 16–18].  For reasons discussed below, the Court finds that the ALJ's determination that Plaintiff's depressive disorder and anxiety disorder were not "severe" is supported by substantial evidence.

To be found disabled, "the ALJ must find that the claimant has a severe impairment or impairments" at step two.  *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 88 (6th Cir. 1985).  An impairment, or combination of impairments, will be found severe if the impairment(s) "significantly limit[ ] [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  The step two determination is "a de minimis hurdle" in that "an impairment will be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."  *Higgs v. Brown*, 880 F.2d 860, 862 (6th Cir. 1988). "A severe mental impairment is 'established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a plaintiff's] statement of symptoms.'"  *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 559 (6th Cir. 2014) (quoting 20 C.F.R. § 416.908).  Ultimately, "disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."  *Hill v. Comm'r of Soc. Sec.*, F. App'x 547, 551 (6th Cir. 2014) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)).  It is the claimant's burden to prove the severity of her impairments.  *Higgs*, 880 F.2d at 863.

Plaintiff argues "her depression and anxiety impairments clearly cause her more than a slight abnormality that minimally affects her ability to work" [Doc. 14 p. 18].  Plaintiff states that during the alleged period of disability, she was on numerous mental health medications [*Id.*]. Plaintiff notes that, as of December 2018, she had reported her depression and anxiety were

23

worsening and were affecting her focus and concentration at work [*Id.* (citing Tr. 335, 341)]. Plaintiff adds that, "[i]n fact, [her] inability to focus and concentrate at work was a reason she had to quit her last job in January 2019" [*Id.* at 18–19 (citing Tr. 45)]. Plaintiff then points to records from June 2019, at which time she told a mental health nurse practitioner that she "has continued to decline physically and emotionally over the last 6 months as she reports having increased anxiety and depression" [*Id.* (citing Tr. 383)]. Plaintiff also relies on her reports of panic attacks, low motivation, irritability, feeling hopeless, and general difficulty with anxious thoughts and feelings, as well as her July 2019 statement that her mental health issues were "ongoing struggles" [*Id.* (citing Tr. 397, 378)]. Plaintiff cites to the Sixth Circuit's opinion in *Burton v. Apfel*, 208 F.3d. 212 (6th Cir 2000), and argues that for all of the reasons just cited, she meets the de minimis hurdle of showing a severe impairment [*Id.* at 19].

In response, the Commissioner argues that substantial evidence supports the ALJ's severity analysis [Doc. 17 p. 16]. Specifically, the Commissioner relies on the ALJ's summary of Plaintiff's history of mental health treatment, "which dated back many years including when she was working and focused on a range of situational stressors" [*Id.* at 17 (citing Tr. 16–18)], as well as the ALJ's observation that "mental status examinations throughout therapy and with her other medical providers consistently indicated normal speech, intact and organized thought process, normal associations and thought content, normal insight and judgment, intact memory and concentration, and euthymic mood" [*Id.* (citing Tr. 16–17, 351, 355, 359, 365, 368, 372, 375, 380, 493–94, 499, 569, 594–95, 654)]. The Commissioner also acknowledges Plaintiff was prescribed medication for her anxiety and depression, but argues "[d]isability is not supported when an individual's impairments are improved with medications" [*Id.* (citing *Smith v. Comm'r of Soc. Sec.*, 564 F. App'x 758, 763 (6th Cir. 2014)]. In this case, the Commissioner asserts "[t]he

24

objective mental status findings . . . show that Plaintiff's depression and anxiety were well controlled with treatment" [*Id.*]. Finally, the Commissioner relates that the ALJ evaluated Plaintiff's functioning in the four domains of functioning required by 20 C.F.R. § 404.1520a and found only mild limitations in these four domains [*Id.* (citing Tr. 18–19)], which is consistent with a finding of non-severe mental impairments [*Id.* (citing 20 C.F.R. § 404.1520a(d)(1))].

Having reviewed the parties' arguments, the relevant case law, and the applicable portions of the record, the Court finds the ALJ's determination that Plaintiff's mental impairments are not severe is supported by substantial evidence. In finding Plaintiff's medically determinable mental impairments were not severe, the ALJ extensively cited Plaintiff's history of mental health treatment, including her diagnoses, prescribed medications, and treatment notes [Tr. 16–17]. *See Hockstedler v. Kijakazi*, No. 4:20-CV-025-DCP, 2021 WL 3645095, at *9 (E.D. Tenn. Aug. 17, 2021) (finding the ALJ's non-severity finding was supported, in part, by the fact the ALJ "reviewed the medical record in great detail regarding Plaintiff's mental impairments"). Most, if not all, of the evidence Plaintiff now relies on in arguing the ALJ's decision was not supported by substantial evidence is the same evidence the ALJ considered in making her determination. *See Bialek v. Comm'r of Soc. Sec. Admin.*, No. 20-cv-11508, 2021 WL 2935249, at *3 (E.D. Mich. July 13, 2021) ("The ALJ considered and discussed the very evidence on which Plaintiff relies. The Court cannot reweigh this evidence at this juncture.").

After reviewing ALJ's history, the ALJ found:

[T]he mental health records suggest her symptoms wax and wane, but improved when on medication and also when she is engaged in activities. Otherwise, they appear to worsen when she is focused on multiple sclerosis or martial issues. However, the records suggest her condition is generally stable and mild when medically compliant.

25

[*Id.*].  The ALJ's finding that Plaintiff's depression and anxiety were controlled by her medication is substantial evidence supporting the ALJ's determination.  *See Hockstedler*, 2021 WL 3645095, at *9 (finding the ALJ's finding that the claimant's mental impairments were not severe was supported, in part by, the fact that the ALJ "cited to specific treatment notes exhibiting medication controlling Plaintiff's symptoms and normal mental status findings"); *Church v. Saul*, No. 2:18-CV-36-HBG, 2019 WL 3070313, at *9 (E.D. Tenn. July 12, 2019) (finding substantial evidence supported the ALJ's finding that Plaintiff's depression was a nonsevere impairment, in part, because Plaintiff's depressive symptoms were conservatively treated and well-managed with medication and Plaintiff's depression did not cause more than minimal limitations in the ability to perform basic mental work related activities); *Yvetta H. v. Comm'r of Soc. Sec.*, No. 2:21-cv-2904, 2022 WL 2352453, at *8 (S.D. Ohio June 30, 2022) (finding ALJ's conclusion that the plaintiff's mental impairments were non-severe was supported by substantial evidence, in part, based on medical records showing "plaintiff's depression was mild [and] stable on medication" and "plaintiff's medications helped her mental impairments").[7]

Finally, the ALJ extensively analyzed the four mental functioning areas set forth in 20 C.F.R. § 404.1520a based on Plaintiff's medical record and found only mild limitations in these four domains [Tr. 17–19].  Plaintiff does not assert that the ALJ failed to consider, or otherwise improperly considered, any of these four factors and, as the Commissioner notes, findings of only mild impairments under these four areas is consistent with a finding of non-severe mental

---

[7]     That Plaintiff's mental impairments were controlled by medications also distinguishes Plaintiff's case from *Burton*, where the Sixth Circuit found the ALJ's non-severity finding was based on "conclusory" statements and "negative inferences."  *See Burton*, 2000 WL 125853, at *4.

26

impairments [Doc. 17 p. 18]. 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degree of our limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe.").

Thus, in analyzing whether Plaintiff's mental impairments are "severe," the ALJ extensively cited Plaintiff's medical records—including the same evidence Plaintiff now relies on in challenging the ALJ's decision—accurately relied on the fact that Plaintiff's depression and anxiety were controlled by medication, and heavily cited Plaintiff's history in considering the four areas of mental functioning, all of which show the ALJ's finding that Plaintiff's mental impairments were not severe is supported by substantial evidence. Accordingly, Plaintiff's second ground for remand is denied.

### C.     The ALJ's Reliance on Obsolete Jobs

Finally, Plaintiff argues the Commissioner's decision must be remanded because the ALJ erroneously relied on obsolete jobs put forth by the vocational expert during the hearing when finding Plaintiff could perform other work in the national economy at step five in the disability analysis [Doc. 14 pp. 19–21]. Specifically, the vocational expert testified to, and the ALJ relied on, document preparer, cutter and paster of press clippings, and addresser as alternative jobs in the national economy that Plaintiff had the RFC to perform [Tr. 31]. On appeal, Plaintiff cites "an ever-growing number of courts around the country [that] recognize that the document preparer (microfilming), cutter-and-paster of press clippings, and addresser jobs are obsolete" [Doc. 14 pp. 19–20 (collecting cases)]. In response, the Commissioner argues Plaintiff's argument is moot because the ALJ determined Plaintiff was not disabled at step four of the disability analysis and, "[m]oreover, Plaintiff's argument for a categorical rule about the jobs cited by the vocational expert at step five is not supported by any decision of this Court, or holdings of the Sixth Circuit,"

27

in fact, "the Sixth Circuit recently rejected this line of argument in *O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 318 (6th Cir. 2020).

The Court finds that it does not need to address Plaintiff's argument regarding the obsolete jobs the ALJ cited at step five in the analysis because Plaintiff has failed to show how the ALJ's determination at step four that Plaintiff could perform her past relevant work was erroneous. "If, at any step in the process, the ALJ concludes that the claimant is or is not disabled, the ALJ can then complete the 'determination or decision and [the ALJ] do[es] not go on to the next step.'" *Martin v. Kijakazi*, No. 2:21-74-KKC, 2022 WL 2110319, at *2 (E.D. Ky. June 10, 2022) (quoting 20 C.F.R. § 404.1520(a)(4))); *see also* 20 C.F.R. § 404.1520(a)(4)(iv) ("If you can still do your past relevant work, we will find that you are not disabled."). Since the ALJ found Plaintiff could perform her past relevant work [Tr. 31], and Plaintiff has otherwise failed to show for the reasons discussed above that the ALJ erred at any point in the sequential process prior to that point, the Court need not consider Plaintiff's "alternative" finding that Plaintiff had the residual functional capacity to do the jobs Plaintiff claims are obsolete [*Id.*]. *See Turner v. Astrue*, No. 6:09-cv-138-KKC, 2010 WL 1948234, at *3, *6 (E.D. Ky. May 13, 2010) (noting that "[w]hile not required to do so, the ALJ proceeded to step five . . . where he determined . . . there are jobs that exist in significant numbers in the national economy that [the plaintiff] can perform" and later finding that, "[b]ecause the Court has found that the ALJ's determination that [the plaintiff] can perform the requirements of her past relevant work . . . , the Commissioner's motion for summary judgment will be granted").

Furthermore, even if the Court were to consider Plaintiff's argument, such argument lacks merit under *O'Neal* because when the ALJ asked the vocational expert during the hearing whether Plaintiff could perform any alternative work, the vocational expert testified to the three jobs

28

Plaintiff now claims are obsolete, the vocational expert confirmed that his testimony was consistent with the DOT, and Plaintiff's counsel cross-examined the vocational expert but failed to address whether any of the alternative jobs were obsolete [Tr. 53–54]. *See Melissa W. v. Comm'r of Soc. Sec.*, No. 1:21-cv-00487, 2022 WL 3154134, at *5 (S.D. Ohio Aug. 8, 2022) (rejecting the plaintiff's assertion that the obsolete nature of document preparer, address clerk, and call-out operator jobs that the vocational expert testified to required remand because, in accordance with *O'Neal*, the vocational expert testified that her testimony was consistent with the DOT, "Plaintiff's attorney did not question the VE regarding whether the . . . identified jobs were obsolete," and "a finding that a claimant can perform even one occupation that exists in significant numbers in the national economy is sufficient to find that the ALJ's decision at step five is supported by substantial evidence"). For both of these reasons, the Court denies Plaintiff's final basis for remand.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 13**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 16**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Debra C. Poplin
Debra C. Poplin
United States Magistrate Judge

29